<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| BRAND STRATEGY, LLC, | : | |
| | : | **Civil Action No. 23-748-SDW-AME** |
| Plaintiff, | : | |
| | : | |
| v. | : | **REPORT and RECOMMENDATION** |
| | : | |
| CAC PROJECTS, INC. and GREGORY G. SMITH, | : | |
| | : | |
| Defendants. | : | |
| | : | |

**ESPINOSA**, Magistrate Judge

This matter comes before the Court upon the defendants' motion to dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, or alternatively, for partial dismissal of the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) [ECF 5]. Plaintiff opposes the motion. The Honorable Susan D. Wigenton, U.S.D.J., referred the motion for a Report and Recommendation pursuant to 28 U.S.C. § 636(b). The Court has reviewed the parties' briefs and considers the motion based on those submissions. *See* Fed. R. Civ. P. 78(b).

For the following reasons, this Court recommends that the Complaint be dismissed pursuant to Rule 12(b)(2).

**I.     BACKGROUND**

This action arises out of allegedly unfulfilled purchase orders placed by plaintiff Brand Strategy, LLC ("Brand Strategy") for goods to be supplied by defendant CAC Projects, Inc. ("CAC"). Brand Strategy is a New Jersey-based limited liability company engaged in the

business of acquiring branded merchandise from various suppliers and reselling it to retailers, such as Costco and Sam's Club, for ultimate sale to consumers. (Compl. ¶¶ 1-3; Papile Decl. ¶¶ 2-3.) Brand Strategy's sole member, Ken Papile, is domiciled in New Jersey. (Compl. ¶ 5; Papile Decl. ¶ 1.) CAC is a Georgia corporation, with its principal place of business in Atlanta, engaged in the retail and wholesale distribution of apparel, shoes, and accessories. (Compl. ¶¶ 6-7; Smith Aff. ¶ 3.) Individual defendant Gregory G. Smith, domiciled in Georgia, is the sole owner and president of CAC. (Compl. ¶¶ 8-9; Smith Aff. ¶ 2.)

Brand Strategy and CAC have been transacting business since 2018. (Smith Aff. ¶ 4; Papile Decl. ¶ 8.)[1] They agreed that CAC would sell goods to Brand Strategy so long as its purchase orders were prepaid. (Smith Aff. ¶ 6; Papile Decl. ¶¶ 11, 13; Compl. ¶ 14.) Brand Strategy describes the parties' course of conduct as follows: "Generally, CAC solicited business from Brand Strategy by sending catalogs and pre-booking information to Brand Strategy from various brand-name apparel companies, and Brand Strategy would then place orders with CAC from the catalogs and pre-booking information provided by CAC." (Papile ¶ 9.) Further, under their arrangement, Brand Strategy was required to prepay for purchase orders. (Compl. ¶ 15.) However, Brand Strategy would prepay for a purchase order only after CAC confirmed the order

---

[1] Smith and Papile, the respective principals of CAC and Brand Strategy, dispute which of the two companies initiated their business relationship. According to Smith, Papile telephoned him to express interest in purchasing merchandise from CAC for resale. (Smith Aff. ¶ 5.) Papile, in contrast, states that the initial contact was made by Smith when he communicated with a now-former employee of Brand Strategy, Cindy Keathly. (Papile Decl. ¶ 7.) For reasons discussed later in this Report and Recommendation, which party placed the call or sent the email initiating the commercial relationship between Brand Strategy and CAC bears at best a negligible impact on this jurisdictional analysis. Moreover, it is not clear that Papile's statement concerning the nature and timing of the communication between Smith and Keathly is based on his firsthand knowledge, as there is no indication he was involved that communication. (*See id.*)

was ready for pick-up. (Papile ¶ 11.) Then, within a few days of payment, CAC would provide Brand Strategy with the pick-up information and all other documentation to fulfill the order. (Compl. ¶ 17; Papile Decl. ¶ 11-12.)

Smith asserts CAC did not deliver merchandise purchased by Brand Strategy, either to its New Jersey place of business or any other location. (Smith Aff. ¶ 8.) Rather, the orders placed by Brand Strategy with CAC were drop-shipped, meaning CAC arranged for orders to be fulfilled at locations identified by Brand Strategy, which would then make its own arrangements to pick up the goods at those locations. (*Id.*) According to Smith "CAC was never made aware of the final destination of the goods." (*Id.*)

Due to CAC's prepayment requirement, the parties agreed Smith would provide a personal guaranty with respect to transactions between Brand Strategy and CAC. (*Id.* ¶ 9; Papile Decl. ¶ 13.) Smith executed a guaranty in favor of Brand Strategy on or about October 22, 2018, in Alpharetta, Georgia (the "Guaranty"). (*Id.*; Smith Aff. ¶ 9; Compl. ¶ 16.) The Guaranty provides Smith will pay for all liabilities incurred by CAC to Brand Strategy and reimburse all expenses incurred in connection with those liabilities. (Smith Aff. Ex. 1; Papile Decl. Ex. B.) Additionally, the executed Guaranty states it is "a contract entered into under and pursuant to the law of the state of New York and shall be in all respects governed, construed, applied and enforce in accordance with the law of said State." (Smith Aff. Ex. 1; Papile Decl. Ex. B.)

The claims in this action arise out of various purchase orders placed by Plaintiff with CAC in 2022 for the purchase of Under Armour and Mountain Hardwear apparel (the "Purchase Orders"). (Compl. ¶¶ 18, 31.) According to the Complaint, four Purchase Orders were prepaid by

Brand Strategy, for a total amount of $532,716.80, but CAC neither fulfilled these four orders nor returned the prepayment, despite Brand Strategy's demands. (*Id.* ¶ 19-23.) The Complaint also identifies thirteen allegedly unfulfilled Purchase Orders, which have not been prepaid by Brand Strategy but which pertain to merchandise Brand Strategy alleges it is contractually obligated to provide to certain of its customers. (*Id.* ¶ 31-32.) The Complaint alleges CAC's failure to fulfill these Purchase Orders has resulted in the cancellation or impending cancellation of orders placed by Brand Strategy's customers. (*Id.* ¶ 33-34.) It also alleges that a prior order for Under Armour apparel, though fulfilled, was insufficient or lacking, thus entitling Brand Strategy to a return of some monies paid. (*Id.* ¶ 29.)

Brand Strategy filed this action on February 8, 2023, in the United States District Court for the District of New Jersey. The suit asserts a breach of contract claim against CAC for failure to fulfill and/or return payment on the eighteen Purchase Orders identified in the Complaint and a breach of guaranty claim against Smith based on the same conduct (Counts One and Two). Additionally, alleging that CAC misused the payment provided for the four prepaid Purchase Orders and caused Brand Strategy to lose profits and good will due its allegedly false representations that certain merchandise would be provided, the Complaint asserts claims for fraudulent inducement, conversion, unjust enrichment, and *quantum meruit* against both CAC and Smith (Counts Three through Six).[2]

Without consenting to this Court's personal jurisdiction over them, CAC and Smith (collectively, "Defendants") now move for dismissal of this action pursuant to Rule 12(b)(2).[3] In

---

[2] Brand Strategy's claims for relief all arise under state law. This Court's subject matter jurisdiction is grounded in 28 U.S.C. § 1332(a).
[3] Defendants further note they do not waive any defenses related to insufficient service of process under Federal Rule of Civil Procedure 4. *See* Not. of Mot. at 2.

the alternative, Defendants argue that, even if the Court is satisfied it may exercise personal jurisdiction, the tort and equitable claims should be dismissed pursuant to Rule 12(b)(6), for failure to state a claim upon which relief may be granted.[4]

## II.      LEGAL STANDARD

Rule 12(b)(2) provides for dismissal of an action when a district court does not have personal jurisdiction over a defendant. "To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff bears the burden of establishing the court's jurisdiction over the moving defendants." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004); *see also O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 316 (3d Cir. 2007) ("once challenged, the plaintiff bears the burden of establishing personal jurisdiction."). To discharge this burden, "the plaintiff must prove by affidavits or other competent evidence that jurisdiction is proper." *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009). If no evidentiary hearing is held on the Rule 12(b)(2) motion, the plaintiff is required to establish only a "prima facie case of personal jurisdiction," and as such "is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Miller Yacht Sales*, 384 F.3d at 97; *see also Carteret Sav. Bank v. Shushan*, 954 F.2d 141, 142 n.1 (3d Cir.), *cert. denied*, 506 U.S. 817 (1992).

A federal court "may assert personal jurisdiction over a nonresident defendant to the extent allowed under the law of the forum state." *Metcalfe*, 566 F.3d at 330; *see also* Fed. R. Civ. P. 4(k)(1)(A) (providing a defendant is subject to the jurisdiction of a United States if it "is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is

---

[4] Because the Court's analysis concludes the District of New Jersey lacks personal jurisdiction over Defendants in connection with this action, this Report and Recommendation does not reach Defendants' Rule 12(b)(6) grounds for dismissal.

located."). New Jersey's long-arm statute, N.J. Ct. R. 4:4-4, authorizes the exercise of personal

jurisdiction "to the fullest limits of due process." *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254,

259 (3d Cir. 1998). Under the well-established standard articulated by the Supreme Court in

*International Shoe Co. v. State of Washington*, the Fourteenth Amendment's Due Process Clause

requires that personal jurisdiction over a nonresident defendant may be exercised by a court if

the defendant has "certain minimum contacts with the forum state, such that the maintenance of

the suit does not offend traditional notions of fair play and substantial justice." 326 U.S. 310, 316

(1945) (internal quotation omitted); *see also Ford Motor Co. v. Montana Eighth Judicial Dist.*

*Cour*t, 141 S. Ct. 1017, 1024 (2021) (describing *International Shoe* as the "canonical decision"

concerning personal jurisdiction); *O'Connor*, 496 F.3d at 316 (holding same).

A minimum contacts analysis must focus on "the defendant's relationship to the forum

State." *Bristol-Myers Squibb Co. v. Superior Court*, 582 U.S. 255, 262 (2017). Establishing

sufficient minimum contacts to support personal jurisdiction requires a demonstration that the

defendant "purposefully avail[ed] itself of the privilege of conducting activities within the forum

State." *Burger King v. Rudzewicz*, 471 U.S. 462, 475 (1985). This requirement implements the

principle that a nonresident defendant have fair notice it may be subject to suit in that foreign

state. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980); *see also Ford*

*Motor Co.*, 141 S. Ct. at 1025 (observing that the personal jurisdiction rules "reflect two sets of

values—treating defendants fairly and protecting 'interstate federalism.'"). Personal jurisdiction

is appropriate, in other words, only if a defendant can "reasonably anticipate being haled into

court" as a result of its activities and connection with the forum state. *World-Wide Volkswagen*

*Corp.*, 444 U.S. at 297.

Supreme Court jurisprudence has recognized two types of personal jurisdiction, general ("all purpose") jurisdiction and specific ("case-linked") jurisdiction, which are distinct based on the nature and extent of the defendant's contacts with the forum. *Ford Motor Co.*, 141 S. Ct. at 1025; *Bristol-Myers Squibb*, 582 U.S. at 262; *Goodyear Dunlop Tires Operations., S.A. v. Brown*, 564 U.S. 915, 919 (2011). General jurisdiction applies when the defendant's "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum state." *Goodyear*, 564 U.S. at 919 (quoting *Int'l Shoe Co.*, 326 U.S. at 317). Where general jurisdiction exists, the defendant's contacts with the state need not be related to the litigation, and, indeed, the forum court "may hear any claim against that defendant, even if all the incidents underlying the claim occurred in a different state." *Bristol-Myers Squibb*, 582 U.S. at 262 (citing *Goodyear*, 564 U.S. at 919). Specific jurisdiction, in contrast, exists only where "[t]he plaintiff's claims . . . 'arise out of or relate to the defendant's contacts' with the forum." *Ford Motor Co.*, 141 S. Ct. at 1025 (quoting *Bristol-Myers Squibb*, 582 U.S. at 262). In other words, for a court to exercise specific personal jurisdiction over a party, "there must be 'an affiliation between the forum and the underlying controversy, principally [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'" *Id.* (quotations omitted); *see also Chavez v. Dole Food Co., Inc.*, 836 F.3d 205, 223 (3d Cir. 2016) (holding that courts may exercise specific jurisdiction over foreign defendants "when the cause of action arises from the defendant's forum related activities.").

III.    **DISCUSSION**

Defendants move to dismiss the entire Complaint under Rule 12(b)(2) on the grounds that the District Court for the District of New Jersey does not possess general or specific personal

jurisdiction over them. In opposition, Brand Strategy does not contend that general jurisdiction

applies.[5] Rather, its argument relies solely on specific jurisdiction and maintains that by

soliciting and engaging in business with a New Jersey-based company, including the numerous

purchase orders at issue in this action, Defendants have purposefully availed themselves of the

privilege of conducting activities within New Jersey and that such conduct gives rise to the

contract and tort claims at issue here.

### A.    General Jurisdiction

Although Brand Strategy fails to engage with the general jurisdiction analysis, for the

sake of completeness, the Court notes the evidence of record falls far short of establishing

general jurisdiction over CAC and/or Smith. Smith, CAC's principal, asserts in his affidavit that

CAC does not maintain an office in New Jersey or have any New Jersey employees. (Smith Aff.

¶ 17.) He adds that, other than sales to Brand Strategy, CAC does not conduct business affiliated

with New Jersey or have any customers in the state. (*Id.* ¶ 12.) He further asserts that Defendants

have never entered or visited New Jersey in connection with any business with Brand Strategy.

(*Id.* ¶ 11.) Smith states that CAC does not advertise its products or services in New Jersey. (*Id.* ¶

16.) He further asserts that neither he nor CAC own any property and/or maintain bank accounts

---

[5] In a footnote to its opposition brief, Brand Strategy states it preserves its right to assert the general
jurisdiction argument for a later date, stating it cannot establish general jurisdiction over Defendants without
discovery of facts solely within their possession. *See* Opp'n Br. at 7 n.2. However, to the extent this statement
constitutes a request for jurisdictional discovery on the question of general jurisdiction, the request lacks good
grounds. Brand Strategy does not attempt to make a *prima facie* demonstration that Defendants' presence in
New Jersey may rise to the high threshold for general jurisdiction. *See infra*, Section III A. Without such
"factual allegations that suggest 'with reasonable particularity' the possible existence of the requisite 'contacts
between [Defendants] and the forum state,'" Brand Strategy's request for discovery is not warranted. *Toys "R"
Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003) (quoting *Mellon Bank (East) PSFS, Nat'l Ass'n v.
Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992)). On this Rule 12(b)(2) motion to dismiss, the burden of
establishing personal jurisdiction falls on Brand Strategy. Its decision not to rebut, in any way, Defendants'
evidence-based assertion that general jurisdiction does not exist amounts to a failure to carry its burden.

in New Jersey. (*Id.* ¶¶ 13-15.) Defendants, in sum, have proffered various, undisputed facts concerning their lack of "continuous and systematic" contacts with New Jersey. The Supreme Court has held: "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Bristol-Myers Squibb*, 582 U.S. at 262. Neither paradigm is even remotely approximated by Defendants' contacts with New Jersey.

### B.    Specific Jurisdiction

Based on the well-established jurisdictional rules articulated by the Supreme Court, the Third Circuit has adopted a three-part test for determining whether the Court may exercise specific jurisdiction over a defendant. First, the defendant must have "'purposefully directed [its] activities' at the forum," meaning it deliberately targeted the forum state. *O'Connor*, 496 F.3d at 317 (quoting *Burger King*, 471 U.S. at 472). Second, "the litigation must 'arise out of or relate to' at least one of those activities." *Id.* (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)). Third, if the first two prongs are met, then the Court "may consider whether the exercise of jurisdiction otherwise 'comport[s] with 'fair play and substantial justice.'" *Id.* (quoting *Burger King*, 471 U.S. at 476).

To establish that a defendant has sufficient "minimum contacts" with a forum to support specific jurisdiction, "there must be an 'affiliation between the forum and the underlying controversy, principally [an] activity or occurrence that takes place in the forum State.'" *Bristol-Myers Squibb Co.*, 582 U.S. at 264 (quoting *Goodyear*, 564 U.S. at 919). The minimum contacts analysis must focus on the defendant's own affiliation with the forum state through its deliberate conduct in relation to the forum, as it is inconsistent with due process to hale a defendant into

court "based on the 'random, fortuitous, or attenuated'" contacts he makes by interacting with other persons affiliated with the State." *Walden v. Fiore*, 571 U.S. 277, 286 (2014) (quoting *Burger King*, 471 U.S. at 475)). Put differently, for personal jurisdiction to attach, the non-resident defendant's "suit-related conduct must create a substantial connection with the forum State." *Id.* at 284.

Here, Defendants' suit-related conduct, as alleged in the Complaint, falls into two main categories: (1) acts and omissions related to breach of contract and (2) tortious conduct. Because specific jurisdiction is focused on a nonresident defendant's activities in the forum state as they relate to a cause of action, *O'Connor*, 496 F.3d at 317, the Court must undertake a separate jurisdictional analysis as to the two groups of claims.[6]

As to the contract claims, Brand Strategy argues that Defendants purposefully availed themselves of the opportunity to do business in New Jersey by pursuing, cultivating, and furthering an ongoing commercial relationship with Brand Strategy. It argues that for years, CAC has "routinely reached into New Jersey to solicit business with Brand Strategy" (Opp'n Br. at 8). Brand Strategy proffers that CAC's conduct has resulted in millions of dollars of sales by CAC to Brand Strategy across approximately forty-six purchase orders for apparel and other products, including the Purchase Orders at issue in this lawsuit. (Papile Decl. ¶¶ 17-18.) Brand Strategy identifies the following activity directed by CAC and Smith to Brand Strategy and New Jersey: They sent routine texts and emails to provide information about available merchandise and opportunities CAC had to supply various branded goods. (*Id.* ¶ 14-15.) They "would

---

[6] The Complaint also asserts two claims for equitable relief, unjust enrichment, and *quantum meruit*, which are based on the same alleged misconduct by Defendants giving rise to the contractual and tort claims. Thus, the Court's minimum contacts analysis concerning whether Defendants' conduct related to the legal claims suffices to establish personal jurisdiction applies equally to the equitable claims.

10

regularly send catalogs and pre-booking information" to highlight available apparel and inquire whether Brand Strategy was interested in purchasing. (*Id.* ¶ 15.) "CAC and Smith sent product samples to Brand Strategy in New Jersey," which Brand Strategy would use in marketing presentations to its own customers. (*Id.* ¶ 16.) Brand Strategy asserts that it and Defendants exchanged "hundreds if not thousands" of calls, texts, and emails (Opp'n Br. at 9) and describes CAC's solicitation and business related communications as "intentional and pervasive." (*Id.* at 11.) Brand Strategy argues that, far from fortuitous and isolated, Defendants' suit-related contacts with the forum state demonstrate that Defendants purposefully availed themselves of the privilege of transacting business in New Jersey. It further argues that those contacts are thus sufficient to support this Court's specific jurisdiction over Defendants.

The Court disagrees. In deciding whether to exercise personal jurisdiction in a breach of contract dispute, a district court must consider "the totality of the circumstances, including the location and character of the contract negotiations, the terms of the contract, and the parties' actual course of dealing." *Remick v. Manfredy*, 238 F.3d 248, 256 (3d Cir. 2001). However, the Third Circuit has long recognized that "a non-resident's contracting with a forum resident, without more, is insufficient to establish the requisite 'minimum contacts' . . . The same is true of "informational communications in furtherance of [such a] contract." *BP Chems. Ltd. v. Formosa Chem. & Fibre Corp.*, 229 F.3d 254, 261 (3d Cir. 2000) (quoting *Sunbelt Corp. v. Noble, Denton & Assoc., Inc.*, 5 F.3d 28, 32 (3d Cir. 1993)); *see also Burger King*, 471 U.S. at 478 ("If the question is whether an individual's contract with an out-of-state party alone can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot."). A contract, even one that is suit-related, and its associated

communications do not suffice to demonstrate the nonresident's "purposeful availment" with the forum as required to satisfy the due process concerns of a jurisdictional analysis. *BP Chems.*, 229 F.3d at 261-62.

Here, despite Brand Strategy's efforts to connect the parties' course of dealing to New Jersey and amplify Defendants' contacts with this state, the contacts, apart from the Purchase Orders themselves, largely amount to telephonic and/or electronic communications between the parties in furtherance of entering and fulfilling orders for merchandise to be supplied by CAC. There is no evidence the Purchase Orders were negotiated or entered into in New Jersey. To the contrary, Brand Strategy itself proffers evidence that the Purchase Orders at issue, and the many others entered into over the course of several years, resulted from and were implemented by calls, texts, and emails, sent and received by CAC and/or Smith outside of New Jersey. The Guaranty, which forms the basis of the breach of contract claim against Smith, has no apparent connection to New Jersey, beyond facilitating a New Jersey-based company's prepayment of the Purchase Orders.[7] The mere fact that Defendants directed communications, including promotional material, to Brand Strategy does not demonstrate that they established a substantial connection with the forum itself, that is, New Jersey. *See, e.g., Exporting Commodities Int'l v. S. Mins. Processing, LLC,* No. 16cv9080, 2017 WL 5513682, at *8 (D.N.J. Nov. 17, 2017) (holding that, although the subject contract was negotiated by emails and phone calls directed by the defendant to the New Jersey plaintiff, those contacts did not justify personal jurisdiction over a non-forum defendants because "these are communications not so much to New Jersey as they

---

[7] Indeed, there is no dispute the Guaranty was signed by Smith in Georgia, and the only state referenced in the Guaranty is New York, in an apparent choice-of-law provision.

are into the electronic ether."); *Merco, Inc. v. So. Cal. Edison Co.*, No. 06cv5182, 2007 WL

1217361, at *6 (D.N.J. Apr. 24, 2007) (finding that the nonresident defendant's exchange of

correspondence with the New Jersey-based plaintiff, using "interstate mail, e-mail, and telephone

service to negotiate the contract and discuss the Project's progress" did not constitute sufficient

contacts to confer specific jurisdiction over the defendant).

This distinction, between the home forum of a contracting plaintiff and activity directed

to the forum state itself, was addressed by another Court in this District, similarly engaged in a

jurisdictional analysis in *Magill v. Elysian Glob Corp.*, No. 20cv6742, 2021 WL 1221064

(D.N.J. Apr. 1, 2021). There, in the context of a breach of contract action related to the

defendants' employment of a New Jersey resident, the Court rejected the plaintiff's attempt to

demonstrate the out-of-state defendants had sufficient minimum contacts with New Jersey based

merely on the defendants' communicating and contracting with a party they knew lived and

performed his contractual obligations in New Jersey. *Id.* at *6. The Court reasoned that, even

assuming the defendant's controlled the plaintiff's day-to-day employment activities, nothing in

the contract itself, the parties' course of dealing, or their communications in furtherance of their

relationship implicated any connection to New Jersey or specific interest of the state. *Id.* The

Court observed that given the nature of the online work performed by the plaintiff in connection

with the subject employment, the plaintiff's claims "would be identical if he lived anywhere else

in the world" and, further, that "Plaintiff's physical location in New Jersey is the only factor that

connects this dispute to New Jersey." *Id.* at *7. Finding insufficient minimum contacts to satisfy

due process, the Court concluded that there was "no indication that Defendants availed

themselves of the privileges of conducting business in New Jersey." *Id.* at *8.

13

This case presents an analogous situation, albeit in the context of a commercial rather than an employment relationship between the parties. Here, the overall course of dealing involved sales of merchandise by CAC to Brand Strategy, formalized through discrete orders, including the Purchase Orders giving rise to this Complaint's breach of contract claim. Nothing about that sales relationship, the Purchase Orders themselves, and/or the placing and fulfilling of orders (either generally or the Purchase Orders at issue) has any connection to New Jersey, other than the mere fact that Brand Strategy operates out of an office in this state. This is not enough to support specific jurisdiction. Regarding a federal court's exercise of personal jurisdiction over a non-resident defendant, the Supreme Court has stressed that "the plaintiff cannot be the only link between the defendant and the forum. Rather it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Walden*, 571 U.S. at 285.

Taking as true the allegations of the Complaint and the facts in the record before the Court on this motion, Defendants' conduct does not establish an affiliation between New Jersey and the underlying controversy, much less support this Court's exercise of personal jurisdiction such that it would comport with notions of fair play and substantial justice. It is uncontroverted that Defendants did not visit or travel to New Jersey in connection with the Purchase Orders specifically or their overall sales to Brand Strategy generally. It is also uncontroverted that CAC did not ship merchandise purchased by Brand Strategy to its New Jersey address or any other location within the state and did not direct products to New Jersey for resale there. Papile states in his declaration that CAC sent Brand Strategy product samples, which Brand Strategy would then use in its presentations to retailers, but there is no indication that CAC or Smith

14

intentionally sent these samples to promote sales to the New Jersey marketplace. Insofar as

Brand Strategy may have marketed merchandise, which would be supplied by CAC, to New

Jersey-based retailers, there is no evidence Defendants were involved in selecting the geographic

target of Brand Strategy's marketing activities. Moreover, the record does not establish that the

samples referenced by Papile have a connection with the Purchase Orders at issue, further

attenuating the connection between this contact—samples sent by CAC to Brand Strategy in

New Jersey—and the Complaint's breach of contract claims.

    Brand Strategy's reliance on *B&C Luxury Auto, Ltd. v. Intex Cargo, Inc.*, a recent

decision by another Court in this District, is misplaced. *See* No. 22cv3229, 2023 WL 2554682

(D.N.J. Mar. 17, 2023). Brand Strategy argues that, as in that case, this Court should find specific

jurisdiction exists where the nonresident defendant knowingly engaged in an ongoing business

relationship with a New Jersey-based company, as fairness dictates the defendant should not be

permitted to avoid litigating in New Jersey under these circumstances. (*See* Opp'n Br. at 11.)

However, in *B&C Luxury Auto*, the Court based its decision on a number of contacts between the

defendants and New Jersey with respect to the alleged breach of contract and related claims,

contacts that have not been demonstrated by Brand Strategy to exist in this case. *See B&C

Luxury Auto, Ltd.*, 2023 WL 2554682, at *3-4. Notably, among the contacts listed was the fact

that the defendant's agent "had travelled to New Jersey on behalf of [the defendant] in order to

initiate an ongoing business relationship with [the plaintiff]." *Id.* at *3.

    While a defendant's presence in the forum state is not required for personal jurisdiction to

attach, "physical entry into the State—either by the defendant in person or through an agent,

goods, mail, or some other means—is certainly a relevant contact." *Walden*, 571 U.S. at 285.

That kind of contact linking Defendants, New Jersey, and subject matter of this litigation is simply not present here to an extent sufficient to support personal jurisdiction. For the reasons discussed, Defendants' electronic communications to Brand Strategy in New Jersey do not suffice to alter that conclusion.[8]

As to Brand Strategy's tort claims, the foregoing minimum contacts analysis similarly falls short of supporting specific jurisdiction. The same due process principles requiring a non-resident defendant's conduct to establish an affiliation with the forum state apply with equal force in the context of intentional tort claims. *Id.* at 286. "A forum State's exercise of jurisdiction over an out-of-state intentional tortfeasor must be based on intentional conduct by the defendant that creates the necessary contacts with the forum." *Id.* However, in *Calder v. Jones*, the Supreme Court refined the traditional minimum contacts analysis for application to tort claims, which considers the location of the tortious conduct's impact. *See Calder v. Jones*, 465 U.S. 783, 789-90 (1984). The *Calder* "effects test" entails three prongs:

> (1) The defendant committed an intentional tort;
>
> (2) The plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort;

---

[8] To further illustrate, consider the hypothetical relocation of Brand Strategy's main office from New Jersey to another state. Concerning a minimum contacts analysis, what impact would the relocation have on the question of whether Defendants have purposefully availed themselves of the privileges of conducting business in Brand Strategy's new home state? Assuming the parties continue transacting business in the same manner as this record reflects, there would appear to be no substantial difference concerning Defendants' interaction, or lack thereof, with the state where Brand Strategy operates. On the facts before the Court, Defendants' connection with New Jersey as it relates to the Purchase Orders appears limited to the fortuitous decision by Brand Strategy to make the state its principal place of business. Simply put, in the absence of other activities, Defendants' texts, emails, and phone calls with Brand Strategy do not create any meaningful affiliation between Defendants and New Jersey in connection with the conduct underlying the claims at issue, such that specific personal jurisdiction is established.

> (3) The defendant expressly aimed his tortious conduct at the
>      forum such that the forum can be said to be the focal point of
>      the tortious activity.

*IMO Indus.*, 155 F.3d at 265-66. *Calder* recognized that, under certain circumstances involving

intentional torts, a defendant's contacts with the forum state plaintiff may be the focus of the

jurisdiction analysis and "enhance otherwise insufficient contacts with the forum such that the

'minimum contacts' prong of the Due Process test is satisfied." *Id.* at 265. Nevertheless, the

Third Circuit has held that, to establish specific jurisdiction under this test, it is essential that the

plaintiff "point to specific activity indicating that the defendant expressly aimed its tortious

conduct at the forum." *Id.* at 266.

The alleged conduct underlying Brand Strategy's claim for fraudulent inducement

consists of Defendants' alleged false assurance it would make the apparel and other goods

covered by certain Purchase Orders available to Brand Strategy, thus inducing Brand Strategy to

prepay for Purchase Orders that CAC did not fulfill as promised. The conversion claim is based

on Defendants' failure to return the prepaid amounts and make other adjustments to a certain

order for which Brand Strategy claims it was overcharged. None of this alleged misconduct by

Defendants, that is, representations that purchased merchandise was available for pick-up, failure

to fulfill Purchase Orders, and failure to return monies to Brand Strategy, occurred in New

Jersey. Assuming the truth of the allegations, Defendants' tortious conduct targeted Brand

Strategy but does not reflect the conduct was "expressly aimed" at New Jersey.

In light of the totality of the circumstances, the facts incident to the Purchase Orders and

Guaranty at issue, and the parties' overall course of conduct, the Court concludes Brand

Strategy's effort to demonstrate sufficient minimum contacts to support specific jurisdiction over

17

Defendants is unavailing, under either the traditional analysis or the effects test. Even assuming

the business relationship giving rise to the Purchase Orders was initiated by CAC and/or Smith,

there is no evidence that Defendants' merchandise sales to Brand Strategy, though intended for

ultimate resale to retailers and then consumers further downstream, deliberately targeted New

Jersey.[9] Nor is there any evidence that the alleged conduct underlying the claims for fraudulent

inducement, conversion, and equitable relief was expressly aimed at New Jersey. Despite Brand

Strategy's emphasis on the volume of business it transacted with CAC and the parties' long-term

commercial relationship, the record here establishes at best a weak and attenuated link between

Defendants' suit-related activity and the State of New Jersey, not "purposeful availment" by

Defendants of the privilege of doing business in New Jersey.

## IV.    CONCLUSION

For the foregoing reasons, this Court finds that Brand Strategy has not met its burden of

establishing that the Court has personal jurisdiction over Defendants. Accordingly, this Court

respectfully recommends that the motion to dismiss the action pursuant to Rule 12(b)(2) be

**GRANTED**.

   /s/ *André M. Espinosa*
ANDRÉ M. ESPINOSA
United States Magistrate Judge

Dated:  July 5, 2023

---

[9] On reply, Defendants stress that, under the drop shipment arrangement, CAC made the purchased goods available for pick up at locations Brand Strategy identified, without CAC's knowledge of the goods' final destination. (Smith Supp. Aff. ¶ 18.)